IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION<br>NO.  25-249 |
| v. | |
| GARY N. MARGERUM | |

## MEMORANDUM OPINION

Defendant Gary N. Margerum ("Margerum") is charged with Distribution and Attempted

Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), (b)(1), and Possession

of Child Pornography, in violation of 18 U.S.C. §2252(a)(4)(B), (b)(2).  Margerum now moves

to suppress evidence gathered pursuant to a search warrant of his residence.  He further moves to

suppress statements he made to police, arguing their use by the Government at trial would be

unlawful.[1]

## I.   FACTUAL BACKGROUND

In December 2024, the Bucks County, Pennsylvania, District Attorney's Office received

a "CyberTip" from the National Center for Missing and Exploited Children (NCMEC), a private

non-profit which serves as a clearinghouse for child sex abuse material-related tips.  The report

was originally submitted by MediaLab/Kik ("Kik"), a private company which provides a range

---

[1] Notably, Margerum does not request an evidentiary hearing on his Motion to Suppress.  "A motion to suppress requires an evidentiary hearing only if the motion is sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress." *United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010).

Margerum's brief is not "sufficiently specific, non-conjectural, and detailed to enable the court to conclude that [he] . . . has presented a colorable constitutional claim." *Id.*  The Motion contains no specific argument or non-conclusory legal statements at all, much less enough necessary to justify an evidentiary hearing.  Furthermore, the Motion's factual statements do not materially differ from those offered by the Government, so there are no apparent "disputed issues of material fact" at play. *Id.* For these reasons, it would not be necessary or fruitful to hold an evidentiary hearing on this Motion.

of messaging and social media services.  According to that tip, "a Kik user, with the username

offdy_w25 . . . had shared child sexual abuse material on December 20, 2024."

Bucks County detectives thereafter obtained a search warrant for the offdy_w25 Kik

account.[2]  From that search, Bucks County law enforcement received the offdy_w25 account's

message logs and subscriber information, and learned that: (1) the offdy_w25 user sent one

image of child sex abuse on December 20, 2024; (2) the account's linked email address was

argerum53@gmail.com[;] (3) the device used to access the account was an Apple iPhone

registered to "Gary Smith[;]" and, (4) the child sex abuse image was sent from IP address

72.92.24.103.  A subsequent subpoena to internet providers revealed this IP address is registered

to "Roxanne Margerum, 15 Tea Rose Lane, Falls (Levittown), PA, 19054."  Pennsylvania

Department of Transportation ("PennDOT") records showed that Gary Margerum lived at 15 Tea

Rose Lane.

In April 2025, this information was presented to a Bucks County magistrate in a warrant

application.  Police specifically requested authorization to search:

> 15 Tea Rose Lane, Levittown, Pennsylvania 19054, which is in Falls Township, Bucks
> County.  This is a single story residence with tan siding and a white garage door.  '15' is
> displayed on the right of the garage door.  This includes a search of the body of all
> outbuildings, vehicles, and persons present.

The police specifically sought to find and seize "all computer(s), smart device(s), cellular

phone(s), gaming console hardware(s) [sic], software, digital storage media and their respective

peripherals."  The magistrate approved the warrant that same day.

Police executed the warrant on April 4, 2025, at 6:04am.  During the course of that

search, police confiscated: (1) a midnight blue iPhone 13; a "Sandisk"; a "Scandisk"; one

---

[2] Margerum does not contest the validity of this warrant.

external hard drive; two "hp laptop[s;]" an Olympus two gigabyte memory card; an "experient jumpdrive[;]" and, a "jump drive[.]"  Police also questioned Margerum in the residence's garage, discussing the reasons for the search and asking about his knowledge of any child sex abuse materials in the house.

Later that day, an arrest warrant was issued and executed for Margerum.  He was subsequently charged by state authorities with Sexual Abuse of Children, in violation of 18 Pa. C.S. § 6312(c), (d) and Criminal Use of a Communication Facility, in violation of 18 Pa. C.S § 75152(a).  About a week later, Margerum was federally charged with Attempted Distribution of Child Pornography, under 18 U.S.C. § 2252(a)(2), (b)(1), and Possession of Child Pornography, under 18 U.S.C. § 2252(a)(4)(B), (b)(2).

## II.    LEGAL STANDARDS

To protect "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," the Fourth Amendment provides that "no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  The "principal means" for enforcing this right is "the judicially created exclusionary rule," which allows for the suppression of evidence gathered in violation of the Fourth Amendment. *United States v. Christine*, 687 F.2d 749, 753 (3d Cir. 1982).  The party who files a motion to suppress evidence bears the burden of proving the Fourth Amendment violation.  *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978).

## III.    ANALYSIS

### A.  Defendant Fails to Meet His Burden

As an initial matter, and as argued by the Government, Margerum does not meet his

burden of proof.  "As a general rule, the burden of proof is on the defendant who seeks to suppress evidence."  *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995).  Vague or conclusory allegations are insufficient to meet this burden.  *United States v. Benoit*, 730 F.3d 280, 288 (3d Cir. 2013).

Margerum's Motion consists entirely of factual statements and legal conclusions.  It does not contain any argument or even legal citations explaining how the Government's search violated the Constitution, or why Margerum's statements should be suppressed.  Facially, it cannot meet its burden of proof, and, thus, denial is required.  *See Benoit*, 730 F.3d at 288.

### B.  Suppression of Evidence

Even if this were not the case, Margerum's Motion would still fail on the merits.

### i.    *There Was Probable Cause Sufficient to Issue the Search Warrant*

Turning to Margerum's arguments regarding the search and the evidence collected, first maintains that "[t]he search warrant of the residence located at 15 Tea Rose Lane in Levittown, Bucks County was conducted in the absence of probable cause to do so."  Specifically, he contends that the search warrant:

- "[D]id not contain the requisite probable cause to conduct the search within the four corners of the written affidavit attached to the search warrant;"

- "[D]id not specify or describe the crime which has allegedly been committed or is allegedly being committed;"

- "[C]ontained evidence that was not in any way corroborated with current credible evidence; [and,]"

"[T]he Fourth Amendment has drawn a firm line at the entrance to the house.  Absent exigent circumstances, that threshold may not reasonably be crossed [by police] without a warrant."  *Payton v. New York*, 445 U.S. 573, 590 (1980).  Put more simply, police are generally barred from searching a home, unless they have previously obtained a search warrant.  *See*

*California v. Acevedo*, 500 U.S. 565, 581 (1991) ("It is a cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." (internal quotations and citations omitted)); *United States v. Hartwell*, 436 F.3d 174, 177 (3d Cir. 2006) ("The Supreme Court has . . . [held] that when people have a reasonable expectation of privacy in their persons or effects, all searches and seizures must be supported by a warrant, unless they fall into one of the exceptions to that requirement." (citing *Minnesota v. Dickerson*, 508 U.S. 366, 372-73 (1993))).

To obtain a search warrant, police must demonstrate to a "neutral and detached" magistrate that there is probable cause sufficient to justify a search. *Johnson v. United States*, 333 U.S. 10, 13-14 (1948). Probable cause has many definitions, but for search warrants is generally accepted as "a fair probability that contraband or evidence of a crime will be found in [the] particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). When assessing a warrant application, the probable cause assessment is a totality of the circumstances inquiry where courts must consider "the whole picture," not each piece of evidence in isolation. *Dist. of Columbia v. Wesby*, 583 U.S. 48, 60 (2018). This includes using "normal inferences" and the "accumulation of circumstantial evidence that together indicates a fair probability of the presence of contraband[.]" *United States v. Burton*, 288 F.3d 91, 103 (3d Cir 2002).

When reviewing a magistrate's issuance of a warrant, district court judges are instructed to be deferential. *Gates*, 462 U.S. at 236. However, while *de novo* review is inappropriate, *id.*, judges should not merely rubber stamp the magistrate's determination. *United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir. 1983). Rather, reviewing judges should look to see if the "magistrate had a 'substantial basis' for concluding that the affidavit supporting the warrant

established probable cause." *United States v. Miknevich*, 638 F.3d 178, 181 (3d Cir. 2011).  In doing so, a reviewing court must confine itself "to the facts that were before the magistrate judge, *i.e.* the affidavit, and [must] not consider information from other portions of the record." *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993).

Here, the evidence set forth in the detective's supporting affidavit was sufficient to establish a "substantial basis" for finding probable cause to search 15 Tea Rose Lane for evidence of child sex abuse material-related offences.  *Miknevich*, 638 F.3d at 181.   The affidavit thoroughly details how and why 15 Tea Rose Lane appeared on the police's radar.  It first explains that Kik flagged the offdy_w25 account as sending child sex abuse material on the platform and notified law enforcement of that activity.  It then explains that subsequent investigation, pursuant to valid search warrants, showed that the offdy_w25 account was registered using argerum@gmail.com, and accessed from an iPhone registered to "Gary Smith." The affidavit further describes other, corollary discoveries, such as that the child sex abuse material was shared from an IP address of 72.92.24.103, which is unique to 15 Tea Rose Lane's internet connection, and that PennDOT records indicated that Gary Margerum lived at 15 Tea Rose Lane at that time.

Finally, the affidavit explains that a search of internet-capable devices and smart electronics was necessary, as almost any "internet-capable smart device and/or computer" is capable of accessing a Kik account and the files maintained by that account.  Furthermore, it noted that "those who collect child pornography, rarely, if ever dispose of their sexually explicit materials and may go to great lengths to [hide and protect] their collections of illicit materials."

Taken together, these facts offered a substantial basis to conclude that there was a "fair probability that contraband or evidence of a crime" would be found at 15 Tea Rose Lane.  *Gates*,

462 U.S. at 238.  First, and most persuasively, the child sex abuse image was sent from 15 Tea Rose Lane's unique IP address.  No other location has a matching IP address, offering strong support that the original child sex abuse image originated from that location, and that additional contraband or evidence would be found there.  Furthermore, the child sex abuse image was sent from an iPhone registered to "*Gary* Smith[,]" by a Kik account tied to "*argerum*@gmail.com[.]" (emphasis added).  While the associated names are not an exact match to Defendant's own, their similarity increases the probability of finding evidence or contraband at the Margerum residence. Finally, the police were investigating the possession and transmission of digital child sex abuse material.  While they only knew of one child sex abuse image, the hoarding proclivity identified in the supporting affidavit suggested a fair probability that child sex abuse material would be found on other devices.

Collectively, these facts and inferences offered a substantial basis for the magistrate to find probable cause, and therefore the warrant was properly issued.  *See Gates*, 462 U.S. at 238-39.  Accordingly, Margerum's Motion shall be denied on these grounds.

### ii.   The Warrant Was Not Unduly General

Margerum next challenges the warrant's particularity, arguing that the search warrant did not:

- "[S]pecifically the property to be seized; [and,]"

- "[N]ame or describe with particularity the person or place to be seized[.]"

Even if probable cause exists to execute a search, a warrant cannot allow "general, exploratory rummaging in a person's belongings."  *Andresen v. Maryland*, 427 U.S. 463, 480 (1976), *abrogated on other grounds by Gates*, 462 U.S. 213.  Rather, warrants must "give a particular description of the things to be seized."  *Johnson*, 690 F.2d 60, 64 (3d Cir. 1982).

These descriptions are binding on police, as "[s]eizure of one thing under a warrant describing another" violates the Fourth Amendment, and "nothing is left to the discretion of the officer executing the warrant." *Christine*, 687 F.2d at 752-53 (internal quotations omitted). Put more simply, a warrant licenses police to seize only the specific items listed, and nothing else. *See Johnson*, 690 F.2d at 63-4.

However, this particularity requirement is checked by a "practical margin of flexibility." *United States v. Fattah*, 858 F.3d 801, 819 (3d Cir. 2017). Where "a more precise description is not feasible[,]" warrants may use generic classifications and headings. *Christine*, 687 F.2d at 760. For example, "all tax records" and "all financial records" are permissible headings for a warrant relating to financial crimes, where police do not yet know which documents in an accountant's filing cabinet are relevant to their investigation. *See Fattah*, 858 F.3d at 819. This principle also extends to computer files. *See United States v. Stabile*, 633 F.3d 219, 240 (3d Cir. 2011). Because "criminals can easily alter file names and file extensions to conceal contraband[,]" police are offered greater leeway in "over-seizing" or preliminary inspection of seized electronic records in order to identify what is of interest. *Id.* at 237-40. However, officers' substantive searches of electronic files must be tailored to what has been authorized by the warrant. *Id.*

In the present case, the police were investigating the possession and sharing of digital child sex abuse material. The search warrant permitted police to confiscate only "computer(s), smart device(s), cellular phone(s), gaming console hardware(s), software, digital storage media, and their associated peripherals" as well as any pertinent electronic records or software contained on such devices.

While these are certainly generic descriptors fitting a wide range of possible devices and

files, they are specific enough to bracket the police's search to only items relevant to the crime under investigation. Prior to the search, police did not know the file contents of each device in the Margerum household. While several of the seized items might not contain any child sex abuse material files, the police were permitted by the warrant and case law to seize them until a preliminary inspection was possible. *See Stabile*, 633 F.3d at 237-40; *Christine*, 687 F.2d at 760. Therefore, this was not a general search, or a "rummage[e]" through Margerum's life, it was a properly tailored search as part of a criminal investigation. *Andresen*, 427 U.S. at 480. Indeed, based on the Receipt of Seized Property, and uncontested by Margerum, only responsive items were in fact seized during the search. The warrant's scope did not violate the particularity requirement.

Turning next to Margerum's argument that the warrant did not "describe with particularity the place to be searched[,]" the Fourth Amendment's particularity requirement also applies to the search location. *Maryland v. Garrison*, 480 U.S. 79, 88 (1987). To comport with the Fourth Amendment's particularity requirement, a search warrant's description of the place to be searched must be drafted such that an officer can with "reasonable effort ascertain and identify the place intended." *Id.* Warrants authorizing the search of a "residence" or "premises" also implicitly permit searching the accompanying curtilage, even if it is not specifically listed in the warrant. *See United States v. Bansal*, 663 F.3d 634, 663 (3d Cir. 2011) (holding that a search warrant of "the entire premises" automatically included the home's curtilage).

In the present case, the warrant targeted one address:

[t]he residence located at 15 Tea Rose Lane, Levittown, Pennsylvania 19054, which is in Falls Township, Bucks County. This is a single-story residence with tan siding and a white garage door. "15" is displayed on the right of the garage door. This includes a search of the body of all outbuildings, vehicles, and persons[.]"

This description offers sufficient description that an officer can "with reasonable, effort ascertain

and identify" the location to be searched. *Garrison*, 480 U.S. at 88. The warrant noted the precise address of the residence, including street, number, and town. The possible locations were further reduced by a physical description of the house in question, including specific details like the location of its address number and décor. Collectively, these details are sufficient to reasonably guide law enforcement to the correct residence and bracket their search to that location. The search of any outbuildings and vehicles was similarly proper, both because they were explicitly included in the warrant, and under the Fourth Amendment's curtilage extension. *See Bansal*, 663 F.3d at 663. All told, the search warrant particularly identified the locations and property to be searched under its auspices.

### iii. The Valid Search Warrant Obviated the Need for Other Grounds to Search 15 Tea Rose Lane

Having determined that the search warrant was supported by probable cause and not unconstitutionally general, Margerum's remaining arguments are swiftly disposed of. Margerum argues that the search should be suppressed because the search of 15 Tea Rose Lane:

- "[W]as conducted in the absence of a warrant for his arrest;"

- "[W]as not conducted incident to his arrest;"

- "[W]as conducted without the consent of Gary Margerum and/or the lawful owner or occupiers of the same[;]" and,

- "[W]as conducted in the absence of exigent circumstances."

Each of these reasons gesture towards one of the reasons police may conduct a search *in the absence* of a valid warrant. When arresting someone, police may conduct a warrantless search of their person. *United States v. Swinehart*, 617 F.2d 336, 341 (3d Cir. 1980) (citing *Chimel v. California*, 395 U.S. 752, 762 (1969)) ("Warrantless searches of a suspect's person conducted during the course of a lawful arrest are constitutional"). Police may also conduct a

warrantless search of a home if the residents or owners consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973) (affirming that a warrantless search is permitted where valid consent has been given). Finally, "exigent circumstances," *i.e.* an ongoing, immediate emergency situation, may permit police to conduct a warrantless search. *United States v. Davis*, 461 F.2d 1026, 1030 (3d Cir. 1972). In any one of these situations, law enforcement is permitted to temporarily ignore the warrant requirement. *United States v. Robinson*, 414 U.S. 218, 224 (1973) ("It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment."); *United States v. Velasquez*, 885 F.2d 1076, 1081 (3d Cir. 1989) ("A voluntarily given consent is an exception to the search warrant requirement and is therefore constitutionally permissible." (citing *Schneckloth*, 412 U.S. at 219)); *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) ("Warrants are generally required to search a person's home or his person unless the 'exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." (quoting *Mincey v. Arizona*, 437 U.S. 385, 393-94 (2006)).

But none of these instances have any application here, where the search was conducted not based on Margerum's consent, an arrest, or an ongoing emergency, but rather pursuant to a valid warrant supported by probable cause. The police did not need to *bypass* the warrant requirement because they had already *fulfilled* it. *See U.S. v. Caminos*, 770 F.2d 361, 363 (3d Cir. 1985) ("The Fourth Amendment to the United States Constitution requires that *in general* searches must be conducted pursuant to a warrant based on probable cause.") (emphasis added); *Good v. Dauphin Cnty. Soc. Servs. for Children & Youth*, 891 F.2d 1087, 1092 (3d Cir. 1982) ([T]he state may not . . . conduct a search of a home . . . in the absence of consent, a valid search warrant, or exigent circumstances.") Since the police possessed a valid search warrant,

exceptions to the warrant requirement are entirely irrelevant to Margerum's case.

### C. Suppression of Statements

Margerum also moves to suppress statements made to police during the April 4, 2025, search of 15 Tea Rose Lane. While other officers were conducting the search, Detectives Ronald MacPherson and Eric Landamia of the Bucks County District Attorney's Office asked Margerum if there was a place they could speak without being overheard. The three proceeded to the garage, accompanied by Detective John Vella of Falls Township Police Department, whose body camera was activated and recording.

Before starting his substantive questioning, MacPherson informed Margerum that he was not in custody, that he was free to leave, and that Vella's body camera was recording the entire conversation. Margerum indicated that he understood and made no move to leave. MacPherson and Landamia then began questioning Margerum about whether he possessed and viewed child sex abuse material. Around 6:15am, MacPherson and Landamia walked away, leaving Margerum and Vella in the garage. Margerum and Vella made some case-related small talk before the conversation fizzled. Vella left the garage around 6:23am and deactivated his body camera. All told, Margerum's conversation with police lasted approximately nineteen minutes.

### iv. Margerum Was Not Under Arrest or Charged at the Time of the Interview

Margerum's initial arguments for suppression are that:

- "The defendant's statement was a product of an illegal arrest."

- "There was unnecessary delay in bringing the defendant before the issuing authority;" and,

- "[He] was not advised of the exact charges to be placed against him[,] nor the possible consequences thereon[.]"

However, these arguments are easily disposed of by the fact that Margerum was not under arrest at the time he spoke to MacPherson and Landamia, nor charged with any crimes.

Starting with the arrest-related arguments, Margerum was not under arrest at the time he spoke with law enforcement, illegal or otherwise.  It is true that statements and confessions obtained from illegal arrest or detention must be excluded.  *See United States ex rel. Gockley v. Myers*, 450 F.2d 232, 237 (3d Cir. 1971) ("If the police are to be deterred from using illegal arrest and detention as a means of obtaining self-incriminating statements, evidence thus obtained must be excluded.")  However, here, no warrant had been issued for Margerum's arrest and there is no factual indication that the police arrested him without a warrant before or during the interview.  In fact, MacPherson explicitly told Margerum that he was not in custody and was free to leave.  Margerum would not actually be arrested until later in the day on April 4, 2025.  Without an arrest, Margerum's statements could not be the product of an illegal arrest.  Therefore, this argument is unpersuasive.

The absence of an arrest is similarly fatal to Margerum's unnecessary delay argument.  He is correct that, after arrest, a defendant must be taken "without unnecessary delay before a magistrate judge, or before a state or local judicial officer" for their initial appearance.  Fed R. Crim. P. 5(a)(1)(A); *Corley v. United States*, 556 U.S. 303, 307-8 (2009); *United States v. Smalls*, 155 F.4th 216, 221 (3d Cir. 2025).  This requirement is a staple of common law, designed to prevent law enforcement from spiriting arrestees away into "secret detention" and harvesting confessions from that illicit captivity.  *Corley*, 556 U.S. at 306-9.  It also serves to inform defendants "of the charges against him." *Id.* at 306.  If authorities fail to promptly present a defendant to a judicial officer, any statements and confessions made by the defendant must be suppressed.  *Corley*, 556 U.S. at 320-21.

However, to suppress a statement based on unnecessary delay, there must actually be an arrest.  Here again, Margerum was not under arrest at the time he spoke with the detectives.  That would not occur until later in the day, and Margerum offers no argument that there was unnecessary delay in his initial appearance at that time.  Therefore, at the time of questioning, there was no need to present Margerum to a judicial officer, and thus no possible delay in doing so.  *See Corley*, 556 U.S. at 320-21.

In a similar vein, Margerum was not charged with any crimes at the time of the interview.  While criminal defendants are entitled to know the charges against them, that right can only attach if charges have been brought via an information or indictment.  *See Russell v. United States*, 369 U.S. 749, 763 (1962) ("[T]he Court has emphasized . . . the protections which an indictment is intended to guarantee [include specifying] . . . the elements of the offense intended to be charged and sufficiently appris[ing] the defendant of what he must be prepared to meet[.]" (internal quotations omitted)); *Hepner v. United States*, 213 U.S. 103, 108 (1909) ("A criminal proceeding, unquestionably, can only be by indictment or information."); *United States v. Smith*, 776 F.3d 1104, 1112 (3d. Cir. 1985) ("[C]riminal proceedings cannot be said to be brought or instituted until a formal charge is openly made against the accused, either by indictment presented or information filed in court." (internal quotations and citations omitted)).

Here, it is not clear how a lack of notice would entitle Margerum to suppression of his statements, as his argument is not tied to any specific protection or procedure.  However, there is no need to puzzle out the exact constitutional issue because Margerum had not been charged with any crimes at the time of questioning.  It is uncontested that the State's criminal complaint was issued *after* MacPherson and Landamia concluded their interview with Margerum.  Federal charges were not brought for another eight days.  The detectives could not give Margerum notice

of any charges against him because they quite simply did not yet exist.

### v.    *Margerum Was Not in Custody*

Margerum also argues that his statements should be suppressed because he:

- "[W]as not advised of his right to remain silent;"

- "[W]as not advised that anything he said would be used against him, nor the possible consequences thereon;"

- "[W]as not advised of his right to counsel before answering any questions;"
- Given "necessary and adequate warnings" before being questioned;

- Did not understand any warnings given; and,

- "[D]id not waive his right to remain silent and/or his right to counsel;

    Each of these alleged deficiencies are one of, or corollary to, a defendant's *Miranda*

rights.  Under *Miranda v. Arizona*, a defendant must be advised that:

> he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

384 U.S. 436, 479 (1966).  "The prosecution may not use statements, whether exculpatory or

inculpatory, stemming from custodial interrogation of a defendant" unless that defendant was (1)

advised of their right to remain silent; and, (2) knowingly, voluntarily, and intelligently waived

those rights.  *Id.* at 444.

    However, police are not required to Mirandize every person they interact with.  *Oregon*

*v. Mathiason*, 429 U.S. 492, 495 (1977).  Rather, warnings are owed only to those being

questioned while in police custody.  *United States v. Willamen*, 437 F.3d 354, 359 (3d Cir.

2006).  A person is in custody when "he is either arrested formally or his freedom of movement

is restricted to the degree associated with a formal arrest."  *Id.* (citing *United States v. Lease*, 176

F.3d 740, 741 (3d Cir. 1999)) (internal quotations omitted).  For a person to be in custody when they are not under arrest, "something must be said or done by the authorities [to signal that police] would not have heeded a request to depart or . . . allow the suspect to do so."  *Id.* (citing *Stiegler v. Anderson*, 496 F.2d 793, 799 (3d Cir. 1974)) (internal quotations omitted).  When examining if a defendant was in custody at the time of questioning, courts often consider: (1) whether the officers told the suspect he was under arrest or free to leave; (2) the location or physical surroundings of the interrogation; (3) the length of the interrogation; (4) whether the officers used coercive tactics such as hostile tones of voice, the display of weapons, or physical restrain of the [defendant's] movement; and, (5) whether the suspect voluntarily submitted to the questioning. *Willamen*, 437 F.3d at 359-60.  However, the ultimate test for whether a person is in custody is if, given the circumstances surrounding the interrogation, a reasonable person would not have felt free to terminate the interrogation and leave.  *United States v. Jacobs*, 431 F.3d 99, 105 (3d Cir. 2005).

Here, it is uncontested that Margerum was not Mirandized prior to questioning, and never explicitly waived his rights.  However, a review of Detective Vella's body camera footage shows that Margerum was not in custody at the time of questioning and so was never entitled to *Miranda* warnings.  First, the questioning occurred in Margerum's own home, at locations of his specific choosing.  This "softens the hard aspects of police interrogation[,]" indicating Margerum was not in custody at the time. *United States v. Killingsworth*, 118 Fed. App'x 649, 651 (3d Cir. 2004) (citing *United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004)).  Furthermore, MacPherson immediately informed Margerum that he was not in custody and was free to leave.  This notice weighs against a finding of custody.  *See Reinert v. Larkins*, 379 F.3d 76, 86 (3d Cir. 2004) (noting that if police had explicitly told the suspect that "he was not under arrest and need

not answer questions, such a statement would surely have bolstered the . . . contention that [the] questioning was non-custodial in nature."). Despite being told that he was free to leave, Margerum chose to remain in the garage answering the officers' questions with no objections. His continued presence indicates he voluntarily submitted to questioning. *See United States v. Wilson*, 413 F.3d 382, 387-88 (3d Cir. 2005) (holding that, after police told the defendant he was free to leave, defendant's subsequent answering of questions and consent to a search were voluntary.).

Turning next to "coercive tactics[,]" the questioning was uniformly cordial. *Willamen*, 437 F.3d at 360. While the detectives' tone was serious, and at times skeptical, it never roamed into hostility or a threatening tenor. No weapons were drawn, brandished or referenced, and Margerum was not physically restrained in any way. All these factors indicate the environment was not coercive.

Finally, the entire interview lasted from 6:04am to approximately 6:23am, a total of nineteen minutes. Courts have found interrogations lasting between one and seven hours to be non-custodial, and Margerum's questioning lasted far shorter than that span. *See United States v. McKinney*, 695 F. Supp.2d 182, 191 (E.D. Pa. 2010) (collecting cases). The brevity of the questioning suggests Margerum was not in custody.

Taken together, these factors indicate that a reasonable person in Margerum's position would have felt empowered to terminate the questioning. *See Jacobs*, 431 F.3d at 105. Margerum was therefore neither in custody nor entitled to *Miranda* warnings.[3] *See Willamen*, 437 F.3d at 359.

---

[3] Because Margerum was never entitled to *Miranda* warnings, there is no need to examine whether he waived those rights.

### vi.     Margerum Was Not Physically or Psychologically Coerced

Margerum further argues that his "statement was the product of physical and/or psychological coercion."

The test for coerced statements if whether "an individual's will was overborne or if his confession was not the product of a rational intellect and a free will." *Townsend v. Sain*, 372 U.S. 293, 307 (1963). Determining whether someone's will was overborn is a "totality of the circumstances analysis includ[ing] consideration of the accused's characteristics and the details of the interrogation such as: . . . his lack of education or low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of questioning; and the use of physical punishment such as the deprivation of food or sleep." *Schneckloth*, 412 U.S. at 226.

Contrary to his assertions, Margerum was not coerced into making statements. As discussed above, the actual questioning was not conducted in a coercive way. Police spoke with Margerum in his own home, at a location of his choice. He was promptly told that he was not in custody and could walk away from the questioning. Throughout the nineteen-minute conversation, the officers maintained a neutral, albeit serious, tone. Margerum was not denied food or water, and in fact sipped from a coffee mug throughout the questioning. None of these are indicative of a coercive atmosphere.

Furthermore, Margerum's legal experience militates against a finding that his will was "overborne[.]" *Townsend*, 372 U.S. at 307. Margerum has prior experience with the criminal legal system, both as a volunteer police officer for Tullytown Township, and in relation to prior criminal charges. This indicates that he had at least some pre-existing knowledge of his rights in these circumstances yet agreed to continue speaking with the detectives.

Margerum's demeanor also indicates that he was not under coercion. He cracked small

jokes, chatted with Vella about a mutual acquaintance, and felt comfortable enough to disagree with the detectives' assertions at multiple points during questioning.  He even maintained those disagreements when they pushed back.  None of these behaviors suggest he had been browbeaten or otherwise cowed by the officers.

Taken together, the absence of major coercion, coupled with Margerum's personal characteristics and demeanor, indicate that his statements were "the product of a rational intellect and free will."  *Townsend*, 372 U.S. at 307.

### vii.    *Margerum Was Not Confronted with Illegally Obtained Evidence*

Finally, Margerum argues that his statements should be suppressed because he was "confronted with illegally obtained evidence."  But Margerum fails to identify any specific evidence he was confronted with.  The question of whether evidence that is not identified was illegally obtained is thus not valid or answerable.

From context, it appears he is invoking the "fruit of the poisonous tree" doctrine. *Nardone v. United States*, 308 U.S. 338, 341 (1939) (coining the term).  Under the Fourth Amendment's exclusionary rule, "primary evidence obtained as a direct result of an illegal search or seizure" must be excluded from a criminal trial.  *Segura v. United States*, 468 U.S. 796, 804 (1984)).  However, this protection also extends to evidence "later discovered and found to be derivative of an illegality." *Id.*  Essentially, when the police use illegally obtained evidence to acquire further information, that derivative evidence is constitutionally tainted, and must also be suppressed.  *See United States v. Herrold*, 962 F.2d 1131, 1137 (3d Cir. 1992) ("[Fruit of the poisonous tree doctrine] requires the exclusion of tangible evidence seized during an unlawful search, and derivative evidence, both tangible and testimonial, acquired as a result of the unlawful search.")

Margerum's Motion does not specify what evidence he is referring to here, why it was obtained unlawfully, or even what derivative evidence he seeks to suppress. Looking then at the body camera footage, there appear to be two possible candidates, neither of which justify suppression.

    a.   <u>The CyberTip and Message History Were Not Obtained Illegally</u>

First, it is possible Margerum seeks to suppress statements elicited by MacPherson's citation to the CyberTip and the text of specific Kik messages during questioning. The detectives started the interview by asking Margerum if he had seen or possessed child sex abuse material. Margerum initially denied that he did so, stating that other denizens of the internet sent it his way, but that he always deleted it as soon as possible. In response, Detective MacPherson explained that the police had received a CyberTip regarding the sharing of child sex abuse material, which identified a particular account and device. Law enforcement had subsequently used a search warrant to acquire that accounts entire history, including its "message content." MacPherson then asked Margerum if he remembered sending a specific message—reading "[do you] like young?"—and "then sent a picture of a naked girl." At this point, Margerum agreed to provide "whatever you need" and recalled sharing child sex abuse material "[a] couple of times, I'm sure, yeah."

MacPherson certainly used evidence to contest Margerum's denials, namely the CyberTip and Kik message. However, neither were obtained illegally. First, law enforcement obtained the CyberTip pursuant to federal law. 18 U.S.C. § 2258A requires electronic service providers[4] to report apparent child sex abuse material to the NCMEC, who in turn direct that

---

[4] Defined as those offering or supplying an electronic communication service or remote computing service. *See* 18 U.S.C. § 2258E.

information to law enforcement.  *See* 18 U.S.C. §§ 2258A(a)(1)(B), (c).

It is uncontested that Kik provides a range of messaging and communication services and is therefore a "provider" subject to Section 2258A's duties and requirements.  *See* 18 U.S.C. § 2258E, A.  Its submission of a report regarding user offdy_25's sending of a child sex abuse image was therefore required by law.  *See* 18 U.S.C. §§ 2258A(a)(1)(B), (c).  Similarly, the NCMEC properly forwarded Kik's report to the Bucks County District Attorney's office.  *See* 18 U.S.C. § 2258A(c).  Absent further argument from Margerum, it is entirely unclear how Kik's compliance with a statutory reporting duty rendered the evidence illegally obtained once it landed in law enforcement's hands.

The Kik messages were also acquired legally.  Using the CyberTip, law enforcement applied for, and received, a warrant to search the offdy_w25 account.  As part of that search, police gained access to offdy_w25's message history, including the one quoted to Margerum during questioning.  Margerum does not challenge this warrant, so there are no grounds to conclude that it was defective or that the resultant search was unlawful.  Therefore, to whatever extent Margerum argues that the quoted message was illegally obtained evidence, that argument is also unpersuasive.  Since neither the CyberTip nor the Kik messages were obtained illegally, any statements they elicited from Margerum are not constitutionally tainted.  *See Segura*, 468 U.S. at 804.

### b.  The Image Was Not Illegally Obtained Evidence

It is also possible that Margerum seeks to suppress those statements elicited when Landamia showed Margerum a picture from the latter's phone.  Early in the questioning, Landamia asked Margerum for his phone's passcode.  Margerum provided it, and Landamia browsed the phone's contents during the interview.  At around 6:10am, Landamia pulled up an

image on Margerum's phone screen and showed it to him.  The following exchange then occurred:

Margerum: What's that?

Landamia: That's what you shared.

Margerum: Ok.

Landamia: And it's on your phone still.

Margerum: I don't know how it's on my phone.  Unless it's in the pictures.

MacPherson: Do you agree you shared that image?

Margerum: Yeah, I might have, yes.

While it is not clear what image was shown to Margerum during this exchange, Landamia did not obtain it illegally.  First, Margerum's phone was subject to the search warrant, which allowed for the search and seizure of all "smart device(s) [and] cellular phone(s)" found at 15 Tea Rose Lane.  Therefore, Landamia was empowered to examine its contents for contraband.  Furthermore, Margerum voluntarily provided Landamia with the passcode to his phone, indicating he consented to the search.  *See United States v. Curry*, 158 F.4th 153, 160-61 (3d Cir. 2025) (holding that where a defendant voluntarily provided police with the passcode to her phone, she had consented to a search of the device).  Between the search warrant and Margerum's consent, any information gleaned from his phone was not obtained illegally.

All told, Margerum was not confronted with any illegally obtained evidence.  Therefore, any derivative statements should not be suppressed as "fruit of the poisonous tree." *Nardone*, 308 U.S. at 341; *Colorado v. Spring*, 479 U.S. 564, 571-72 (1987) ("A confession cannot be fruit of the poisonous tree if the tree itself is not poisonous.")

An appropriate order follows.

**BY THE COURT:**


  **s/ Wendy Beetlestone**
**WENDY BEETLESTONE, C.J.**